## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ETHEL YOUNG, an individual, KATHLEEN D. HAYDEN, an individual, and STERLYN BROWN, Administrator of the Estate of SYLVIA BROWN and Administrator of the Estate of DENISE HYLTON, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE, N.A. <br><br> Defendant. | **CASE NO.** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

### INTRODUCTION

Plaintiffs KATHLEEN D. HAYDEN, ETHEL YOUNG, and STERLYN BROWN, the Administrator of the Estate of Sylvia Brown and the Administrator of the Estate of Denise Hylton, ("Plaintiffs"), by and through their attorneys of record, bring this action on behalf of themselves and all other persons who had residential mortgage loans originated or previously owned by Washington Mutual Bank ("WMB"), and to whom Defendant JPMORGAN CHASE, N.A. ("Defendant" or "Chase"), WMB's successor in interest, has represented, falsely, that it had an ownership interest in the loans, has charged and collected payments from homeowners for these loans, and has attempted to foreclose, or has been foreclosing, on these loans in its own name as mortgagee and beneficiary of the security instruments, even though the residential mortgage loans allegedly had never been acquired by, sold or transferred to Chase.

Plaintiffs hereby allege, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## THE PARTIES

1.      Plaintiff Ethel Young is a resident of Illinois.  On or about April 15, 2008, Plaintiff Young made, executed and delivered to WMB a promissory note and a deed of trust granting WMB a security interest in certain real property located in Matteson, Illinois.  At some point  in time after September 25, 2008, Chase started billing Plaintiff Young and received payments from her for the residential mortgage loan that  previously was originated or owned by WMB, and which was not owned by Chase.

2.      Plaintiff Kathleen D. Hayden is a resident of California.  On or about June 4, 2005, Plaintiff Hayden made, executed and delivered to WMB a promissory note and a deed of trust granting WMB a security interest in certain real property located in Placentia, California. At some point  in time after September 25, 2008, Chase started billing Plaintiff Hayden and received payments from her for the residential mortgage loan that was originated or previously owned by WMB, and which was not owned by Chase.

3.      Plaintiff Steryln Brown is a resident of Brooklyn, New York.  He is the Administrator of the Estate of Sylvia Brown and the Administrator of the Estate of Denise Hylton.  On or around July 23, 2001, Sylvia Brown, the late wife of Plaintiff Brown, and Denise Hylton, the late mother of Plaintiff Brown, executed and delivered to WMB a promissory note and deed of trust granting WMB a security interest in certain real property located in Brooklyn, New York.  At some point in time after September 25, 2008, Chase started billing Sylvia Brown and received payments from her and Plaintiff Brown on the residential mortgage loan that previously was originated or owned by WMB and which was not owned by Chase.

4.      Defendant JPMorgan Chase, N.A. ("Chase") is a national bank with its headquarters located at 270 Park Avenue, New York, New York.  Chase took over WMB's deposit accounts after the Federal Deposit Insurance Corporation (FDIC) accepted responsibility for (or became the "Receiver" of) WMB and its assets on September 25, 2008.  However, on information and belief, Chase is not the owner of numerous residential mortgage loans which were originated or previously owned by WMB.

2

## JURISDICTION AND VENUE

5.      Jurisdiction and venue are proper in this Court.

6.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of plaintiffs are citizens of different states than Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the state in which Defendant is a citizen.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred, and the property of Plaintiff Brown which is the subject of this action is situated, in this district and many of the acts and transactions giving rise to this action occurred in this district and because Defendant (i) is authorized to conduct business in this district and has intentionally availed itself of the laws within this district; (ii) does substantial business in this district, and (iii) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

8.      On January 1, 2005, Washington Mutual, Inc.'s state savings bank, the former Washington Mutual Bank, merged into Washington Mutual Bank, FA.  Subsequently, Washington Mutual Bank, FA changed its named to Washington Mutual Bank ("WMB").  WMB was insured by the FDIC.

9.      On or about September 25, 2008, WMB was closed by the Office of Thrift Supervision and the FDIC was named Receiver.  Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC as Receiver of WMB and Chase dated September 25, 2008, Chase acquired certain unspecified assets of WMB.  However, Chase did not acquire hundreds or thousands of the residential mortgage loans and/or loan commitments of WMB, and no schedule or inventory of assets listing any specific WMB residential mortgage loan acquired by Chase exists or has ever been produced or disclosed.

10.    In the matter captioned, *JPMorgan Chase, N.A., as Successor in Interest to Washington Mutual Bank  v. Waisome*, 2009 CA 005717 (Fifth Judicial Circuit, Lake County Florida) the deposition of a former WMB employee and subsequent Chase employee, Lawrence Nardi, revealed that a schedule showing which residential mortgage loans were owned outright by WMB (asset loans) and which residential mortgage loans were securitized and not owned by WMB was contemplated in connection with the purchase of WMB from the FDIC by Chase. (May 9, 2012 Nardi Dep. at 57:19-24; 58:1-8).  However, that schedule has never materialized in any form.  Indeed, Nardi testified that such a schedule simply does not exist.  *Id*. at 58:1-8 ("I know that there was a schedule contemplated in certain documents related to the purchase.  That schedule has never materialized in any form.  We've looked for it in countless other cases. We've never been able to produce it in any previous cases.  It would certainly be a wonderful thing to have, but it's – as far as I know, it doesn't exist.")

11.    WMB sold a significant portion of its residential mortgage loans to hundreds of private investors prior to the FDIC Receivership, and hence, Chase never acquired them from WMB or the FDIC.

12.    A report from the U.S. Senate Permanent Subcommittee into the origins of the 2008 financial crisis found that "from 2004 to 2008, WaMu [WMB] originated a huge number of poor quality mortgages, most of which were then resold to investment banks and other investors hungry for mortgage backed securities.  For a period of time, demand for these securities was so great the WaMu [WMB] formed its own securitization arm on Wall Street."[1]

13.    In connection with the Purchase and Assumption Agreement, the FDIC had been working on a document to be posted on Intralinks that addressed various bidder questions about the proposed WMB transaction with Chase.  Among the "Frequently Asked Questions" (FAQs) was the following question and answer:

---

[1] Report from the U.S. Senate Permanent Subcommittee "Wall Street and the Financial Crisi: Anatomy of a Financial Collapse," April 13, 2011 at page 48.

[Question:] Are the off-balance sheet credit card portfolio and mortgage securitizations included in the transaction? Do you expect the acquirer to assume the servicing obligations? If there are pricing issues associated with the contracts (e.g., the pricing is disadvantageous to the assuming institution), can we take advantage of the FDIC's repudiation powers to effect a repricing?

Answer: The bank's interests and obligations associated with the off-balance sheet credit card portfolio and mortgage securitizations pass to the acquirer. Only contracts and obligations remaining in the receivership are subject to repudiation powers.

Thus, at most, Chase had "interests and obligations associated with" the off-balance sheet mortgage securitizations; it did not acquire ownership of the actual residential mortgage loans which comprised the mortgage securitizations sold to hundreds of individual investors by WMB prior to September 25, 2008.

14.     Moreover, there were significant and fatal defects in the chain of title and mortgage satisfaction recordings for numerous residential mortgage loans originated or previously owned by WMB, thus preventing actual and lawful acquisition by Chase when it was neither mortgagee nor beneficiary thereof.

15.     Chase has incurred, and has sought reimbursement from the FDIC for, certain costs associated with WMB residential mortgage loans that were not reflected on the books and records of WMB as of September 25, 2008, including, but not limited to, costs incurred by Chase for:  (a) creating individual assignments of the associated mortgages/deeds of trust and allonges in an effort to avoid liability for wrongful foreclosure on these mortgages; (b) expunging records associated with WMB mortgages as a result of errors in mortgage documentation occurring prior to September 25, 2008, including erroneously recorded satisfactions of mortgages and associated legal fees and disbursements; and (c) "correcting" various defects in the chains of title for WMB mortgages occurring prior to September 25, 2008.  These unusual and suspicious activities show that Chase did not, and could not, actually and lawfully acquire these loans because of the serious and fatal defects in chain of title and the erroneously recorded satisfactions of mortgages.

5

16.     Despite the fact Chase never owned or lawfully acquired a substantial number of WMB's residential mortgage loans, including the loans of Plaintiffs and other members of the Class, Chase has been unlawfully collecting and/or foreclosing on thousands of residential mortgage loans originated or previously owned by WMB, including the loans of Plaintiffs and other members of the Class, in its own name as mortgagee and beneficiary of the security instruments.

17.     Chase continues to unlawfully claim ownership of these residential mortgage loans, to represent that it has an ownership interest in the residential mortgage loans, and continues to charge, collect and retain payments made by borrowers thereon and to institute wrongful foreclosure proceedings in its own name.

**Plaintiff Ethel Young**

18.     On or about April 16, 2008 Plaintiff Young made, executed and delivered to WMB a Promissory Note in the principal sum of $176,000 for property located at 5751 Timberlane Road, Matteson, Illinois 60443.  Pursuant to the Note, Plaintiff Young was obligated to make monthly principal and interest payments.  The Note was secured by a mortgage on the real property located in Matteson, Illinois.

19.     At some point in time after September 25, 2008, Chase began charging and receiving payments from Plaintiff Young and other members of the Class for mortgage payments due for the residential mortgage loans originated or previously owned by WMB.

20.     On or about May 1, 2011, Plaintiff Young defaulted on payments for her mortgage loan which was originated or previously owned by WMB, and Chase initiated the foreclosure proceedings in its own name against Plaintiff Young on or about August 26, 2011.

21.     On January 16, 2012, Chase wrote to Plaintiff Young stating, *inter alia*, that Fannie Mae, not Chase, was the owner of her residential mortgage loan for the property located at 5751 Timberlane Road, Matteson, Illinois.

22. On or about February 5, 2013, Plaintiff Young filed for bankruptcy. After the bankruptcy discharge, Chase continued to bill Plaintiff Young for mortgage payments on the mortgage loan originated or previously owned by WMB.

23. On or around March 2, 2013, more than two years after Chase had commenced foreclosure proceedings in its own name against Plaintiff Young for default on the WMB mortgage for the property located at 5751 Timberlane Road, Matteson, Illinois, Chase purported to assign itself Plaintiff Young's WMB mortgage. The "Assignment of Mortgage" was signed by Audia Gardenhi, as the Vice President of JPMorgan Chase Bank, National Association, and the Attorney-in -Fact for the Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank F/K/A/ Washington Mutual Bank, FA. The Assignment states "This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008."

24. This alleged Assignment was invalid and void for several reasons. First, Chase had previously represented that Fannie Mae, not Chase, was the owner of Plaintiff Young's residential mortgage loan on January 16, 2012. Chase cannot assign itself a mortgage which is owned by Fannie Mae.

25. Second, upon information and belief, Audia Gardenhi was not both a Vice President of Chase and an "attorney in fact" for the FDIC in March 2013.

26. Moreover, while the FDIC provided Chase with a limited power of attorney in connection with the September 25, 2008 Purchase and Assumption Agreement, that limited power of attorney automatically expired two years later on September 25, 2010. Indeed, in *Ames v. JPMorgan Chase Bank, N.A.*, 298 Ga. 732, 2016 Ga. LEXIS 210 *** (March 7, 2016), the FDIC represented that it had appointed Chase "to act as Attorney-in-Fact for the [FDIC] for the limited purposed of transferring "any interest in real estate . . .and any personal appurtenant to the real estate from the [FDIC] to [Chase] or to an affiliate of [Chase]." *Id*., at **2-3. In *Ames*, the FDIC represented that this limited power of attorney was effective on September 25, 2008, and "automatically revoked" on September 25, 2010. *Id*.

27.     The March 2, 2013 "Assignment" of Plaintiff Young's residential mortgage loan is invalid and void for the additional reason that it was created out of whole cloth by Nationwide Title Clearing – a document service provider. On its website, www.netc.com/ntclink/Services/DocumentServices/Assignments.aspx, Nationwide Title Clearing states that it "offers a complete resolution process for problem files and research services, making it easy to procure and repair documents mandatory to transfer the loan or record an assignment." In other words, Nationwide Title Clearing "creates" or fabricates documents after the fact which are missing in the chain of title to enable the recording of a fraudulent assignment of mortgage.

28.     On October 24, 2013, the Attorney General of Illinois entered a Final Consent Decree with National Title Clearing to resolve allegations that it had violated the Illinois Consumer Fraud Act and Uniform Deceptive Trade Practices Act in the course of its business of creating, signing, and recoding documents in the public land records system in Illinois on behalf of financial institutions or mortgage servicers within the mortgage industry. Pursuant to the Final Consent Decree, National Title Clearing was required, *inter alia,* to "remediate any document in Illinois that is found by a court to be a cloud on title or otherwise unlawful. . . [and] also remediate any document when reasonably necessary to assist any person or borrower, or when required by federal, state, or local law."

29.     On May 6, 2014, Plaintiff Young received a letter from Chase which stated that she is responsible to Chase for her mortgage payments on her loan which was "closed, or originated, by Washington Mutual Bank on April 15, 2008." In this letter, Chase represented to Plaintiff Young that "Chase acquired your loan in good faith." Chase further represented in this letter to Plaintiff that "We have reviewed the loan and we maintain that you have undertaken a valid, binding and legally enforceable obligation to us." These statements were materially false and misleading. As set forth herein, upon information and belief, Chase did not purchase Plaintiff Young's mortgage from WMB and had no right to represent that it had an ownership interest in the mortgage.

8

30.     On May 26, 2016, Plaintiff Young's property was sold in foreclosure, and Chase was the successful bidder at the sale.

31.     For the reasons set forth herein, Chase did not purchase or lawfully acquire Plaintiff Young's residential mortgage loan from WMB or the FDIC and had no right to represent that it had an ownership interest in the mortgage, to commence foreclosure proceedings in its own name, or to collect and retain payments from Plaintiff Young on the residential mortgage loan.

**Plaintiff Kathleen D. Hayden**

32.     On or about June 4, 2005, Plaintiff Hayden made, executed and delivered to WMB a Promissory Note in the principal sum of $60,000 for property located at 2082 Mariposa Way, Placentia, California 92870.  Pursuant to the Note, Plaintiff Hayden was obligated to make monthly principal and interest payments.  On or about June 4, 2005, Plaintiff Hayden made, executed and delivered to WMB a Deed of Trust granting WMB a security interest in certain real property located at 2082 Mariposa Way, Placentia, California.

33.     At some point in time after September 25, 2008, Chase started billing and receiving payments from Plaintiff Hayden and other members of the Class, for the residential mortgage loans that were originated or previously owned by WMB, even though the loans did not belong to Chase.

34.     Thereafter, Plaintiff Hayden defaulted on her loan payments, and Chase initiated foreclosure proceedings in its own name.

35.     On or about August 19, 2011, Plaintiff Hayden filed for bankruptcy, and received a Chapter 7 discharge on or about March 26, 2012.

36.     After the bankruptcy discharge on March 26, 2012, Chase attempted to collect loan payments from Plaintiff Hayden for the residential mortgage loan originated or previously owned by WMB.  In or around 2013, Plaintiff Hayden began receiving collection calls from a debt collector requesting payment on behalf of Chase for the residential mortgage loan originated

or previously owned by WMB for the property located at 2082 Mariposa Way, Placentia, California.

37.     On September 23, 2015, Chase wrote to Plaintiff Hayden's spouse concerning Plaintiff Hayden's mortgage account for the loan originated or previously owned by WMB for the property located at 2082 Mariposa Way, Placentia, California.  The upper righthand corner of this letter stated "LET'S SETTLE Three options to settle your account for much less than the remaining balance."  In this letter Chase stated, "We understand that you've received a Chapter 7 bankruptcy discharge and you don't have to pay any amount toward this account."  Chase went on to represent "We also realize that we may hold the lien on the property that may keep you from moving on."  This statement was materially false, deceptive and misleading because Chase never acquired an ownership interest in Plaintiff Hayden's loan which was originated or previously owned by WMB.  In this letter, Chase offered "to greatly reduce the remaining balance of $59,654.91 on [Plaintiff's] account, so it's easier for you to settle this account once and for all."  This statement was deceptive and misleading because Chase was not the owner of Plaintiff Hayden's residential mortgage loan and did not have the authority from the loan owner(s) to enter into a settlement with Plaintiff Hayden.

38.     On February 26, 2016, Chase wrote to Plaintiff Hayden regarding her mortgage account for the loan originated or previously owned by WMB for the property located at 2082 Mariposa Way, Placentia, California.  In the February 26, 2016 letter, Chase offered three options to settle Plaintiff Hayden's residential mortgage account balance for an amount less than the settlement amounts offered in the September 23, 2015 letter.  The upper righthand corner of the February 26, 2016 letter stated "LET'S SETTLE.  Three options to settle your account for much less than the remaining balance."  In this letter Chase stated, "We understand that you've received a Chapter 7 bankruptcy discharge and you don't have to pay any amount toward this account."  Chase went on to represent "We also realize that we may hold the lien on the property that may keep you from moving on."  This statement was materially false and misleading because Chase never acquired an ownership interest in Plaintiff Hayden's loan which was

originated or previously owned by WMB.  Chase, moreover, had no authority to "settle" any account balance that Plaintiff Hayden may have had on this loan.  In this letter, Chase offered a "repayment plan" to Plaintiff Hayden, including the option of making 36 monthly payments at $269.00.

39.     Plaintiff Hayden accepted Chase's "offer" of a repayment plan of $269.00 per month as set forth in the February 26, 2016 letter and began making a monthly payment of $269.00.  Plaintiff Hayden continued to make these monthly payments to Chase for approximately the next two years.

40.     On January 26, 2018, Chase wrote to Plaintiff Hayden stating "We received your check for $269.00 for your home equity account, but we can't accept it because the account has been settled, or you're no longer responsible for the account.  As a result, we're returning your payment.  We've enclosed your check for $269.00."  However, Chase did not return any previous payments made by Plaintiff Hayden on the mortgage loan originated or previously owned by WMB.

41.     For the reasons set forth herein, Chase did not purchase or lawfully acquire Plaintiff Hayden's residential mortgage loan for the property located at 2082 Mariposa Way, Placentia, California from WMB or the FDIC and had no right to represent that it had an ownership interest in the mortgage, to commence foreclosure proceedings in its own name, and to collect and retain payments from Plaintiff Hayden on the mortgage loan.

**Plaintiff Sterlyn Brown, as Administrator of the Estate of Sylvia Brown and Administrator of the Estate of Denise Hylton**

42.     On or around July 23, 2001, Sylvia Brown, the late wife of Plaintiff Sterlyn Brown, and Denise Hylton, the late mother of Plaintiff Sterlyn Brown, executed and delivered to WMB a promissory note and deed of trust granting WMB a security interest in certain real property located at 105-10 Avenue J, Brooklyn, New York 11236.

11

43.     At some point after September 25, 2008, Chase started billing and receiving payments from Sylvia Brown and other members of the Class for the residential mortgage loans that were originated or previously owned by WMB, even though the loans did not belong to Chase.

44.     On July 24, 2012, Sylvia Brown passed away, and Plaintiff Sterlyn Brown became the Administrator of the Estate of Sylvia Brown. Plaintiff Brown was also the Administrator of the Estate of Denise Hylton, his late mother. Plaintiff Brown continued to make monthly mortgage payments to Chase for the mortgage originated or previously owned by WMB for the property located at 105-10 Avenue J, Brooklyn, New York.

45.     In or around November 1, 2013, Plaintiff Brown defaulted on the mortgage loan payments.

46.     On September 5, 2014, Chase commenced foreclosure proceedings in its own name against Sylvia Brown as a result of default on the mortgage loan originated or previously owned by WMB on the property located at 105-10 Avenue J, Brooklyn, New York. Chase represented in the foreclosure complaint that Chase "is the current owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage note." This statement was materially false and misleading because Chase did not acquire an ownership interest in a substantial number of the residential mortgage loans originated or previously owned by WMB, including Sylvia Brown's mortgage loan, and had not been delegated authority by the owner and holder of the subject mortgage note to commence foreclosure proceedings.

47.     Chase also represented in the foreclosure complaint brought against Sylvia Brown that if Chase "is not the original owner and holder of the subject note and mortgage then information regarding the chain of title will be contained in Schedule "D". In Schedule D to the foreclosure complaint, Chase represented "[t]he Note and Mortgage were transferred to JPMorgan Chase Bank, National Association, and said transfer was memorialized by Assignment of Mortgage executed on February 24, 2014."

48.     The so-called February 24, 2014 Assignment was signed by Kaila A. Murphy, as both the Vice President of Chase and the "attorney in fact" for the FDIC.  This alleged Assignment of the Browns' WMB mortgage took place more than five years after Chase allegedly acquired certain unspecified assets of WMB from the FDIC pursuant to the Purchase and Assumption Agreement dated September 25, 2008.

49.     Upon information and belief, Kaila A. Murphy was not a Vice President of Chase and the "attorney in fact" for the FDIC in February 2014.

50.     Indeed, as set forth in *Ames v. JPMorgan Chase Bank, N.A.*, 298 Ga. 732, 2016 Ga. LEXIS 210 *** (March 7, 2016), in connection with the Purchase and Assumption Agreement, the FDIC had appointed Chase "to act as Attorney-in-Fact for the [FDIC]" for the limited purposed of transferring "any interest in real estate . . .and any personal appurtenant to the real estate from the [FDIC] to [Chase] or to an affiliate of [Chase]." *Id.*, at **2-3.  However, this limited power of attorney was effective on September 25, 2008, and "automatically revoked" on September 25, 2010.  *Id.*  Thus, the Assignment of Mortgage dated February 24, 2014 is false, invalid and void because it was created more than three years after Chase's limited power of attorney from the FDIC was revoked.

51.     The Assignment of Mortgage dated February 24, 2014 is false, invalid and void for the additional reason that it was created out of whole cloth by Nationwide Title Clearing (which appears as the presenter and returnee on the Assignment) – a document service provider.  On its website, [www.netc.com/ntclink/Services/DocumentServices/Assignments.aspx](www.netc.com/ntclink/Services/DocumentServices/Assignments.aspx), Nationwide Title Clearing states that it "offers a complete resolution process for problem files and research services, making it easy to procure and repair documents mandatory to transfer the loan or record an assignment."  In other words, Nationwide Title Clearing "creates" or fabricates documents after the fact which are missing in a chain of title to enable the recording of a fraudulent assignment of mortgage.

52.     The February 24, 2014 Assignment was generated by Nationwide Title Clearing after Plaintiff Brown defaulted on the loan solely for the purpose of enabling Chase, who lacked

13

an ownership interest in the loan, to record the false assignment of the mortgage on March 26, 2014, in order to commence foreclosure proceedings.

53.     On July 27, 2017, the law offices of Shapiro, DiCaro & Barak, LLC, as the agent of Chase, wrote to Plaintiff Sterlyn Brown, as Administrator of the Estate of Sylvia Brown and the Administrator of the Estate of Denise Hylton, concerning the mortgage loan originated or previously owned by WMB.  In this letter, Shapiro, DiCaro & Barak, LLC, as the agent of Chase stated, "As of July 18, 2017, our client has advised us that the amount of debt is $248,463.03.  The creditor to whom the debt is owed is JPMorgan Chase Bank, National Association."  This statement was materially false and misleading because Chase was not the creditor to whom the debt was owed by Plaintiff Brown, the Administrator of the Estate of Sylvia Brown and the Administrator of the Estate of Denise Hylton, and Chase did not acquire an ownership interest in the residential mortgage loan to Sylvia Brown and Denise Hylton which was originated or previously owned by WMB.

54.     On September 5, 2017, the law offices of Shapiro, DiCaro & Barak, LLC, as the agent of Chase, wrote to Plaintiff Sterlyn Brown, as Administrator of the Estate of Sylvia Brown and Administrator of the Estate of Denise Hylton, concerning the mortgage loan to Sylvia Brown which was originated or previously owned by WMB.  In this letter, Shapiro, DiCaro & Barak, LLC, as the agent of Chase, represented that JPMorgan Chase Bank, N.A. is the current loan servicer and holder of the Note and Mortgage."  This statement was materially false and misleading because Chase did not acquire an ownership interest in the residential mortgage loan to Sylvia Brown which was originated or previously owned by WMB, and the February 24, 2014 Assignment was false, invalid and void.

55.     Chase made additional false representations to Plaintiff Brown concerning its ownership of the residential mortgage loan for the property located at 105-10 Avenue J, Brooklyn, New York, including providing Plaintiff Brown with an undated "Allonge to Mortgage Note" which represented that JPMorgan Chase Bank NA was both the buyer and the seller of Sylvia

Brown's mortgage. The undated Allonge was signed on behalf of Chase by Cory J. Settoon, Vice President.

56.     On October 12, 2017, Chase filed a foreclosure complaint in its own name against Sterlyn Brown, Individually and as Administrator of the Estate of Sylvia Brown and as Administrator of the Estate of Denise Hylton, for default on the mortgage originated or previously owned by WMB.   In this foreclosure complaint, Chase falsely represents that the Note and Mortgage were transferred to JPMorgan Chase Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on February 24, 2014, and recorded March 26, 2014.   As alleged above, however, this Assignment and subsequent recording were false, invalid and void.

57.     For the reasons set forth herein, Chase did not purchase or properly acquire Denise Hylton and Sylvia Brown's mortgage from WMB, the FDIC or itself and had no right to represent to Plaintiff Brown, as Administrator of the Estate of Sylvia Brown and Administrator of the Estate of Denise Hylton, that it had an ownership interest in the residential mortgage loan, to collect and retain payments from Plaintiff Brown on the loan, or to commence foreclosure proceedings in its own name.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs of this Complaint as if set forth herein.

59.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a nationwide consumer class defined as follows and reserve the right to amend the class definition:

> All persons in the United States who had residential mortgage loans made or previously owned by WMB which were not acquired by Chase pursuant to the Purchase and Assumption Agreement and who were charged by Chase and who paid Chase for those loans as a result of Chase's representation that it has or had ownership interest in the loans during the applicable statute of limitations.

60.     The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of Defendant's operation involved, however, Plaintiffs believe the total number of Class Members is in the thousands and members are numerous and geographically dispersed across the United States.  While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class Members in a single class action will provide substantial benefits to all parties and to the Court.

61.     There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiffs and the Class and these common questions of fact and law include, but are not limited to, the following:

- Whether Defendant acquired the residential mortgage loans of Plaintiffs and other members of the Class which were originated or previously owned by WMB;

- Whether Defendant falsely represents to consumers that it owns the WMB residential mortgage loans and whether based on this representation it bills and receives payments from Class Members, and/or or forecloses on those loans in its own name;

- Whether Defendant had a duty to disclose to Plaintiffs and Class Members that it never acquired the WMB residential mortgage loans;

- Whether Defendant's alleged conduct violates public policy;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiffs and Class Members have sustained monetary loss and the proper measure of that loss;

- Whether Chase has been unjustly enriched by this conduct;

- Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

62.     Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and Class Members have been similarly affected by Defendant's common course of conduct

since they all relied on Defendant's false representations concerning its alleged ownership of Class Members' residential mortgage loans with WMB.

63.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general, and claims regarding consumer class actions in particular. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

64.     Plaintiffs and the members of the Class have suffered, and will continue to suffer, harm as a result of the Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

65.     Adjudication of individual Class Members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could similarly impair or impede the ability of Class Members to protect their interests.

**FIRST CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(By Plaintiffs and on Behalf of the Class as Against Defendant)**

66.     Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs of this Complaint as if set forth herein.

67.     As alleged herein, Plaintiffs conferred a benefit upon Defendant. Defendant and its affiliates received from Plaintiffs and Class Members benefits in the form of loan payments and fees related to residential mortgage loans Defendant did not own.

68.     Defendant has knowledge of this benefit, and solicited, voluntarily accepted, and retained the benefit conferred.

69.     Defendant has been enriched at the expense of Plaintiffs because Defendant retained the benefits, but did not have the authority to release Plaintiffs from liability, or issue determinations of loan satisfaction, because Defendant did not own the loans.

70.     Defendant has been further enriched because Defendant received financial benefits in the form of increased interest income based on the loan payments received from Plaintiffs and Class Members.

71.     It is against equity and good conscience to permit Defendant to retain the aforementioned benefits.

72.     Wherefore, Plaintiffs, on behalf of themselves and all similarly situated Class Members, demand an award against Defendant in the amounts by which Defendant has been unjustly enriched at Plaintiffs' and the Class Members' expense, and such other relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**CONVERSION**

**(By Plaintiffs and on Behalf of the Class as Against Defendant)**

73.     Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs of this Complaint as if set forth herein.

74.     As alleged herein, Defendant willfully interfered with Plaintiffs' and Class Members' right to property in the form of their loan payments to Defendant.

18

75.     Defendant willfully, intentionally, and substantially interfered with Plaintiffs' property by soliciting, accepting, and retaining Plaintiffs' and Class Members' loan payments under false pretense that Chase owns the residential mortgage loans in question.

76.     Defendant's actions enabled it to collect loan payments from Plaintiffs and Class Members that Defendant was not authorized to retain.

77.     Plaintiffs and Class Members were harmed because they were deprived of the amounts retained by Defendant.

78.     Defendant's accepting and retaining of Plaintiffs' and Class Members' loan payments caused Plaintiffs' and Class Members' substantial damages.

79.     Wherefore, Plaintiffs, on behalf of themselves and all similarly situated Class Members, demand an award against Defendant in the amount by which Defendant collected from Plaintiffs and the Class Members, and such other relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**MONEY HAD AND RECEIVED**

**(By Plaintiffs and on Behalf of the Class as Against Defendant)**

80.     Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs of this Complaint as if set forth herein.

81.     As alleged herein, Defendant collected, received, and retained money from Plaintiffs and Class Members that Defendant was not authorized to retain.  The payments received and retained by Defendant were not used for the benefit of Plaintiffs and Class Members, for instance in the form of loan balance reduction and/or satisfaction of loans, because Defendant did not own the residential mortgage loans.

82.     Defendant has not returned the payments it unlawfully received to Plaintiffs or Class Members.

83.     Wherefore, Plaintiffs, on behalf of themselves and all similarly situated Class Members, demand an award against Defendant in the amounts by which Defendant received from Plaintiffs and the Class Members, and such other relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### For Unlawful Business Practices
### [Cal. Bus. and Prof. Code §§ 17200 *et seq*.]

84.     Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs of this Complaint as if set forth herein.  Plaintiff Hayden brings this claim individually and on behalf of a California subclass.

85.     Chase is a "person" as that term is defined under Cal. Bus. and Prof. Code §17201.

86.     Cal. Bus. And Prof. Code § 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.

87.     During the applicable statute of limitations, by and through the conduct described in the preceding paragraphs, Defendant has engaged in deceptive, unfair and unlawful practices by soliciting and receiving payments for residential mortgage loans Defendant did not own. Defendants deceived Class Members by implying or representing that Defendant owned the residential mortgage loans and was properly allowed to collect the debt, in violation of California Business and Professions Code section 17200 *et seq*., and has thereby deprived Plaintiff Hayden, and the other members of the California subclass, of fundamental rights and privileges.

88.     By and through the deceptive, unfair and unlawful business practices described in this complaint, Chase has obtained valuable property, money, and services from Plaintiff Hayden, and the other members of the California subclass, and has deprived them of valuable rights and benefits guaranteed by law, all to their detriment.

89.     All the acts described herein as are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, and unscrupulous, and thereby constitute deceptive, unfair and unlawful business practices in violation of California Business and Professions Code section 17200 *et seq*.

90.     Plaintiff Hayden, and the other members of the California subclass, are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which

Chase has acquired, or of which Plaintiff Hayden, and other members of the California subclass, have been deprived, by means of the above described deceptive, unfair and unlawful business practices.

91.     Plaintiff Hayden and the other members of the California subclass are further entitled to, and do, seek a declaration that Defendant's above described business practices are deceptive, unfair and unlawful and that an injunctive relief should be issued requiring Defendant to adhere its business practices and policies to California law, and restraining Chase from engaging in any of the above described deceptive, unfair and unlawful business practices in the future.

92.     Plaintiff Hayden and the other members of the California subclass have no plain, speedy, and/or adequate remedy at law to redress the injuries which they have suffered as a consequence of the deceptive, unfair and unlawful business practices of Chase.  As a result of the deceptive, unfair and unlawful business practices described above, Plaintiff Hayden and the other members of the California subclass have suffered and will continue to suffer irreparable harm unless Chase is restrained from continuing to engage in these deceptive, unfair and unlawful business practices.  In addition, Chase should be required to disgorge the unpaid moneys to Plaintiff and the other members of the California subclass.

93.     Pursuant to California Code of Civil Procedure section 1021.5, Plaintiff Hayden requests that the court award her and the other members of the California subclass reasonable attorneys' fees and costs incurred by them in this action.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (Violation of 815 ILCS 505 *et seq*.)

94.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.  Plaintiff Young brings this claim individually and on behalf of an Illinois subclass.

95.     The elements of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 et seq. (West 2002)) are (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) that the deception occur in a course of conduct involving trade and commerce; and (4) damages." (Miller, 326 Ill.App.3d at 655, 260 Ill. Dec. 735, 762 N.E.2d 1.)

96.     As alleged herein, Defendant engaged in a deceptive act of soliciting payments from Plaintiff and Illinois subclass members on residential mortgage loans that Defendant did not own and commencing and maintaining foreclosure proceedings in its own name against Plaintiff and other Illinois subclass members when it did not have the right to do so because it lacked an ownership interest in the loan. Defendant deceived debtors by falsely representing and otherwise implying that Defendant owned the residential mortgage loans and was properly allowed to collect the debt, either by collecting monthly mortgage payments or by commencing foreclosure proceedings.

97.     Defendant's alleged unlawful conducted was intended to make debtors rely on the deceptive acts, and believe they were required to make payments to Defendant to satisfy the loan debts.

98.     Defendant's unlawful conduct alleged herein occurred in the course of mortgage loan trade and commerce, an industry in which Defendant has years of experience.

99.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff Young and other members of the Illinois subclass made payments to Defendant even though Defendant was not the holder or owner of the residential mortgage loans, and Plaintiff Young and other members of the Illinois subclass were deprived of the amounts of their payments, and satisfaction of their loans.  Plaintiff Young and other members of the Illinois subclass were also required to defense themselves in wrongful foreclosure proceedings and/or also lost their homes in foreclosure proceedings brought in Defendant's own name.

100.    Plaintiff Young and other Illinois subclass nembers are entitled to seek recovery of actual damages, injunctive relief, reasonable costs and attorney's fees, and any other relief the Court deems appropriate, pursuant to 815 ILCS 505/10a.

## SIXTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW, SECTION 349

101.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.  Plaintiff Brown, as Administrator of the Estate of Sylvia Brown and Administrator of the Estate of Denise Hylton, brings this claim individually and on behalf of a New York subclass.

102.    Defendant's conduct constitutes deceptive acts or practices in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. §349.  Plaintiff Brown, as Administrator of the Estate of Sylvia Brown and Administrator of the Estate of Denise Hylton, is a member of the consuming public.

103.    As fully alleged above, Defendant deceived debtors in New York by falsely representing that it owned the residential mortgage loans of Plaintiff Brown and the other members of the New York subclass.  Based on these misrepresentations, Defendant solicited and retained payments from, and commenced foreclosure proceedings in its own name against, Plaintiff and other members of the New York subclass on loans that Defendant did not own.

104.    Defendant's conduct was materially misleading to Plaintiff Brown and members of the New York subclass.

105.    As a direct and proximate result of Defendant' violation of this statute, Plaintiff Brown and the members of the New York subclass were injured and suffered damages.

106.    The injuries to Plaintiff Brown and the members of the New York subclass were foreseeable to Defendant and, thus the Defendant's actions were unconscionable and unreasonable.

23

107.   Defendant is liable for damages sustained by Plaintiff Brown and the members of the New York subclass to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

108.   Pursuant to section 349 (h) of the New York General Business Law, Plaintiff Brown and the New York subclass seek an order of this court enjoining Defendant from continuing to engage in unlawful acts or practices and any other act prohibited by law, including those set forth in the complaint.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and on behalf of general public, pray for judgment against Defendant as to each and every cause of action, including:

A. An order declaring this action to be a proper Class Action, and requiring an issuance of Class Notice to Class Members;

B. An order awarding Plaintiffs and the proposed Class Members damages in the amount to be determined at trial;

C. An order awarding restitution and disgorgement of the amounts Defendant improperly took from Class Members;

D. An order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

E. An order awarding attorneys' fees and costs to Plaintiffs;

F. An award of punitive damages;

G. An order providing for any such further relief as may be just and proper.

Plaintiffs demand a trial by jury as to all claims so triable.

Dated:  June 26, 2018

**GISKAN SOLOTAROFF & ANDERSON LLP**

*Catherine E. Anderson*

Catherine E. Anderson, Esq.
canderson@gslawny.com
217 Centre Street

New York, New York 10013
Tel:  (212) 847-8315
Fax:  (646) 964-9610

**THE MARKHAM LAW FIRM**
David R. Markham, Esq.
*dmarkham@markham-law.com*
Maggie Realin, Esq.
*mrealin@markham-law.com*
Michael Morphew, Esq.
*mmorphew@markham-law.com*
750 B Street, Suite 1950
San Diego, California 92101
Tel:  (619) 399-3995
Fax:  (619) 615-2067

**LAW OFFICES OF BARRON E. RAMOS**
Barron E. Ramos, Esq.
*barron@familyestatecounsel.com*
23120 Alicia Pkwy, Suite 200
Mission Viejo, California 92692
Tel:  (949) 446-0180
Fax:  (760) 994-1354